IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DALE SHEPARDSON, Individually and on Behalf of
All Others Similarly Situated     PLAINTIFF

v.     CASE NO. 3:18-CV-3105

MIDWAY INDUSTRIES, INC;
TOOL STEEL SERVICE, INC; and
TOOL STEEL SERVICE OF CALIFORNIA, INC.     DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court is the Joint Motion for Stipulated Collective Action Settlement and Settlement Approval (Doc. 20) filed by the parties in this case. For the reasons given below, the Joint Motion is **DENIED**.

### I. BACKGROUND

Dale Shepardson filed his Complaint (Doc. 1) against Defendants Midway Industries, Inc., Tool Steel Service, Inc., and Tool Steel Service of California, Inc. on October 4, 2018. The Complaint is a hybrid class and collective action seeking to recover under the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA") for Defendants' allegedly illegal practice of allowing employees such as Shepardson to accumulate "comp time" in lieu of receiving overtime premium pay when they worked over forty hours in a given week.

On February 8, 2019, the parties filed a Notice of Settlement and Request for Removal of Case Management Hearing (Doc. 18) with the Court. Broadly speaking, the parties noted that they had reached a settlement in principle, but simply needed more time to complete the settlement and dismissal paperwork. The Court gave the parties an

1

additional month in which to do so, which resulted in the present motion. Because the parties' notice of settlement came so early in the proceedings, no collective or class action proceedings had been initiated. Thus, the Joint Motion seeks to certify, for settlement purposes only, the following group:

> All current and former employees of Midway who received paid time off in exchange for working overtime hours between October 5, 2015, and the date of execution of this Settlement Agreement.

In exchange for settling and releasing the classes' FLSA and AMWA claims, the Settlement Agreement notes that Midway agrees to pay the total sum of $17,306.00, with $5,406.00 being allocated to settlement class members, $2,000.00 being allocated to Dale Shepardson as a service (incentive) payment, and $9,900.00 allocated to Class Counsel for attorney's fees, costs, and expenses. In addition, the Settlement Agreement specifies that members of the settlement class must timely cash their settlement checks in order to opt in to the settlement. The Agreement purports to release the FLSA and AMWA claims only for those members of the settlement class who do so.

## II. LEGAL STANDARDS

As the Court stated above, no class or collective action has yet been approved. Thus, the Court would first "[note] that the law is unsettled as to whether judicial approval of a proposed settlement of FLSA claims is required in the absence of a certified class." *King v. Raineri Const., LLC*, 2015 WL 631253, at *1 (E.D. Mo. Feb. 12, 2015). The concern with private settlements of FLSA claims—*i.e.*, those not sanctioned by either the Department of Labor[1] or a court—has largely concerned whether such agreements

---

[1] *See, e.g., Beauford v. ActionLink, LLC*, 781 F.3d 396, 405-06 (8th Cir. 2015) ("Before employees sue, they can waive their FLSA rights only if they agree to accept full payment

2

effectively release the employee's rights or whether any purported releases are invalid. The emerging consensus has been that such release language in private FLSA settlements may be valid where there is a judicial determination that there was an actual bona fide dispute between the parties and the settlement agreement fairly resolves it. *See, e.g., Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368, 372 (E.D.N.Y. 2013) ("[U]ntil some court determines that there was a bona fide dispute as to how much plaintiff was owed in wages, and that the offer of judgment fairly compromises it, the employer has not eliminated its risk [of exposure to future litigation]."); *see also Martin v. Spring Break '83 Prods., LLC*, 688 F.3d 247, 257 (5th Cir. 2012) (enforcing a private settlement agreement where plaintiffs were represented and the court determined a bona fide dispute existed when the settlement was entered).

Thus, after litigation begins, the prevailing trend is that the parties must obtain judicial approval of their FLSA settlement agreements and may do so only after the district court approves the settlement and enters a corresponding judgment. *Beauford*, 781 F.3d at 405-06 ("After commencing litigation, employees can waive their rights only if the parties agree on a settlement amount and the district court enters a stipulated judgment."); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015) ("The district court held that parties cannot enter into private settlements of FLSA claims without either the approval of the district court or the Department of Labor ("DOL"). We agree that absent such approval, parties cannot settle their FLSA claims through a private stipulated dismissal with prejudice pursuant to Federal Rule of Civil Procedure

---

of a settlement offered by their employer, they receive full payment of that settlement, and the settlement was supervised by the Secretary of Labor.").

3

41(a)(1)(A)(ii)."). Thus, the Court will follow this trend and presume that judicial approval is required in this particular case.

Before a court approves an FLSA settlement agreement, it must determine that "the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties." *Boland v. Baue Funeral Home Co.*, 2015 WL 7300507, at *2 (E.D. Mo. Nov. 18, 2015) (citations omitted). "A settlement is bona fide if it reflects a reasonable compromise over issues actually in dispute, since employees may not waive their entitlement to minimum wage and overtime pay under [the] FLSA." *King*, 2015 WL 631253, at *2 (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 115 (1946)). If the court determines that there is a bona fide dispute, it must next determine that the agreement purporting to settle that agreement is fair and reasonable to all parties. Such a determination usually involves considering:

> the stage of the litigation and amount of discovery exchanged, the experience of counsel, the probability of plaintiffs' success on the merits, any 'overreaching' by the employer in the settlement negotiations, and whether the settlement was the product of arm's length negotiations between represented parties based on the merits of the case.

*King*, 2015 WL 631253, at *2 (citing *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 132-33 (D.D.C. 2014)).

### III. DISCUSSION

Although the Court commends the parties for their efforts to reach resolution of this case, the Court has a number of concerns about provisions of the Settlement Agreement that prevent it from approving the Agreement in its current form.

4

### 1. Insufficient Opt-In Procedures for FLSA Claim

The parties have identified seventeen potential members of the settlement class. The Agreement (Doc. 20-1) and Notice of Settlement (Doc. 20-2) both allow individual members of the settlement group to opt in to the settlement by negotiating (cashing) their settlement check within 90 days of it being mailed. (Doc. 20-1, p. 1, ¶ 2; Doc. 20-2, p. 1). Such a procedure is insufficient. Under the provisions of the FLSA, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Therefore, courts have held it improper to treat those who cash their settlement checks as having opted in. *Douglas v. Allied Universal Sec. Servs.*, 371 F. Supp. 3d 78, 85 (E.D.N.Y. 2019) ("First, [the] FLSA does not allow the cashing of a settlement check to serve as an employee's consent to become a collective member; after consenting in writing, the written consent must be filed on the docket.").

Moreover, courts have even held this procedure insufficient when opt-in language was printed on the back of the check, which the class members sign before cashing. *See, e.g., Kempen v. Matheson Tri-Gas, Inc.*, 2016 WL 4073336, at *9 (N.D. Cal. Aug. 1, 2016) ("In this case, FLSA putative class members are not properly directed to give their consent in writing and have it filed with the Court in order to join the class. The parties provide no support for their assertion that having class members sign, then cash, checks with purported opt-in language printed on the back complies with the plain-language requirements of § 216(b)."). The Court agrees with these decisions and concludes that the procedure set out in the current settlement agreement as to how members can opt in does not satisfy the clear statutory requirements of the FLSA.

## 2. No Discussion of Effect of Class Treatment of State Law Claims

A related problem with the Scope of Release (¶ 2) paragraph in the Settlement Agreement lies in its provision that the settlement would release all federal *and* state statutory claims for those who opt in. This provision ignores that the state law AMWA claim would have to proceed according to Rule 23 in order to be resolved on a class-basis. However, this Court joins several others in concluding that "requiring Rule 23 class members to opt in to a settlement appears, at least arguably, contrary to law." *Maciel v. Bar 20 Dairy, LLC*, 2018 WL 5291969, at *7 (E.D. Cal. 2018); *Ackal v. Centennial Beauregard Cellular LLC*, 700 F.3d 212, 217 (5th Cir. 2012) ("Simply put, there is no authority for establishing 'opt-in' classes in which the class members must take action to be included in the class."); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974) ("The requirement of an affirmative request for inclusion in the class is contrary to the express language of Rule 23(c)(2)(b)."). Because Rule 23 classes are opt-out, courts considering settlement agreements in such hybrid actions generally require that the settlement group be notified of the opt-in nature of FLSA actions, the opt-out nature of claims proceeding under Rule 23, and the effect of opting into the FLSA collective action, opting out of the Rule 23 class action, or doing nothing. *Maciel*, 2018 WL 5291969 at *7.

The Settlement Agreement and Notice of Settlement do not attempt to explain that, if certified as a settlement class, class members would have to opt out of the class in order to not be bound by any settlement of the state AMWA claim. Because class members are bound by the judgment in a Rule 23 class action unless they opt out, *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975), such notice to the prospective settlement class members is crucial. Moreover, the statement in the

Agreement and Notice of Settlement that only those who opt in to the settlement will release all of their claims, state and federal, is incorrect. The Court cannot approve a settlement agreement which incorrectly advises class members of their rights.

An additional problem arising from the omission of any information about the state law claims proceeding under Rule 23 is that the Court lacks sufficient information from the parties' submission to evaluate whether the prospective class meets the requirements of Rule 23. The fact that the parties propose to create a class for settlement purposes only does not obviate the need for the Court to evaluate whether the group qualifies for class treatment. In fact, some circuits hold such groups to higher standards, giving more exacting review to class settlements reached before a class is certified "to ensure that the class representatives and their counsel do not receive a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel has a duty to represent.'"). *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 610 (E.D. Cal. 2015) (quoting *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012)). Because the Court cannot even make the initial determination that the proposed settlement group complies with Rule 23's requirements, it cannot certify the proposed settlement class.

Finally, the Settlement Agreement merely provides for recovery by the class members from one fund, without disaggregating that recovery between the FLSA and AMWA claims. Such a procedure has also been viewed skeptically by courts, especially since the differing nature of the actions (opt-in vs. opt-out) makes it necessary for class members to have a clear understanding of what they stand to gain before they make any determination about how to proceed. *See, e.g., Thompson v. Costco Wholesale Corp.*, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) (noting that "courts that have approved

settlements releasing both FLSA and Rule 23 claims generally do so *only* when the parties expressly allocate settlement payments to FLSA claims").

### 3. The Court cannot determine whether the Settlement Agreement is fair and reasonable

Beyond the obvious structural problems identified above, the Court also cannot determine whether the proposed settlement is fair and reasonable. The Settlement Agreement states a total payment amount of $5,406.00 to settlement class members. Section 4.1 of the Agreement further provides that settlement group members will be paid according to estimates of the amount of overtime that they worked. However, it is not clear from the Settlement Agreement whether this $5,406.00 *fully* compensates all of the settlement group's overtime amount or whether this total represents some compromise. For instance, the Court has been provided with no information documenting the hours for the seventeen members of the proposed settlement class. Moreover, the Court's concerns are compounded by comparing the requested amount of fees ($9,900.00 or approximately 57% of the settlement) with the recovery amount devoted for repaying settlement class members. Without ensuring that the $5,406.00 fully compensates settlement class members for their unpaid overtime, the Court has great difficulty approving a settlement that gives such a large and disproportionate amount of the settlement fund to class counsel. *See, e.g., Douglas*, 371 F. Supp. 3d at 85 ("A fee that is so disproportionate to a plaintiff's recovery raises questions of whether counsel has taken monies that should be awarded to the employee."). Without the documentation to assure itself of the settlement's fairness to the class members, the Court cannot resolve its doubts about the justification for such a large award of attorney's fees.

## IV. CONCLUSION

The Court has not endeavored to provide an exhaustive list of issues (or potential issues) it sees with the Settlement Agreement. Rather, the Court has focused here only on the most salient features of the Agreement that it hopes the parties will work to resolve. This Court does not want to stand in the way of parties' attempts to amicably resolve a bona fide FLSA dispute. However, given the above concerns, the Court simply cannot approve the settlement in its current form. For these reasons, the Joint Motion for Stipulated Collective Action Settlement and Settlement Approval (Doc. 20) is **DENIED**.

**IT IS SO ORDERED** on this 1st date of July, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE